**[FOR PUBLICATION]**

**[12, 15, 18, 19, 23]**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SHARON CLEMENTS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 06-cv-01640 (FLW) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| HOUSING AUTHORITY OF THE | : | |
| BOROUGH OF PRINCETON & | : | |
| SCOTT PARSONS | : | |
| | : | |
| | : | **OPINION** |
| Defendants. | : | |
| | : | |
| | : | |

**WOLFSON, United States District Judge**

Presently before the Court is the Motion of Defendants, Housing Authority of the Borough of Princeton ("HAP") and Scott Parsons, for Summary Judgment on Plaintiff, Sharon Clements' claims under the Americans with Disabilities Act ("ADA"), Family Medical Leave Act ("FMLA"), Title VII, and New Jersey's Law Against Discrimination ("NJLAD"). This Court finds that Plaintiff cannot meet the threshold requirement to bring suit under the ADA, FMLA, and Title VII because the HAP did not employ the requisite number of employees to trigger the applicability of these Acts. As a result, this Court dismisses all federal claims against

Defendants and declines to exercise supplemental jurisdiction over Plaintiff's NJLAD claims.

Plaintiff may reassert the NJLAD claims in state court.  Pursuant to 28 U.S.C. § 1367(d), the

period of limitations shall be tolled for the time Plaintiff's NJLAD claims were pending with this

Court and a period of 30 days after Plaintiff's NJLAD claims are dismissed unless State law

provides for a longer tolling period.

**I.    BACKGROUND**

On April 7th, 2006, Plaintiff filed a complaint in federal court alleging that she was

wrongfully terminated by her employer, HAP, while out on a medical leave of absence which

began in May 2004.  Plaintiff claims that the HAP terminated her position for two unlawful

reasons: first, because she was disabled and requested an extended medical leave to

accommodate her injury; second, in retaliation for filing various complaints against the HAP

alleging racial disparate treatment of co-workers as well as allegations of mismanagement and

improprieties of federal U.S. Department of Housing and Urban Development ("HUD") funds

dispersed to Defendant HAP.

**A.    DISABILITY DISCRIMINATION CLAIMS**

During June 2002, Plaintiff was hired by Defendant HAP to fill the newly created

position of property manager.  Pl.'s Fact Statement ¶ 22; Defs.' Fact Statement ¶ 22.  She

commenced her employment with the HAP on July 8, 2002.  Pl.'s Fact St. ¶ 27; Def's Fact St. ¶

27.  In January 2004, Plaintiff underwent emergency surgery for a herniated disc and requested

medical leave from Defendant Scott Parsons, the executive director of the HAP.  Pl.'s Fact St. ¶

35; Defs.'  Fact St. ¶ 35.  Parsons granted Plaintiff four weeks of paid medical leave.  Pl.'s Fact

St. ¶¶ 36-37; Defs.' Fact St. ¶¶ 36-37.  Then on March 15, 2004, Plaintiff re-injured her back in a

-2-

motor vehicle accident.  Pl.'s Fact St. ¶ 39; Defs.' Fact St. ¶ 39.  Plaintiff did not miss work immediately, however she was diagnosed by Dr. Bonafino, M.D. with cervical, thoracic and lumbar sprains.  Pl.'s Fact St. ¶¶ 40-41; Defs.' Fact St. ¶¶ 40-41.  Thereafter, Dr. Bonafino recommended that Plaintiff stop working and Plaintiff requested a medical leave of absence, which was granted by Parsons on May 1, 2004.  Pl.'s Fact St. ¶¶ 42-43; Defs.' Fact St. ¶¶ 42-43. Plaintiff, who was terminated from employment while on medical leave, contends that she was terminated due to disability discrimination relating to her requests for extended medical leave.

### B.    RETALIATION CLAIMS

Plaintiff also contends that she was terminated in retaliation for having exercised her rights under the NJLAD and pursuant to 42 U.S.C. 2000e-3(a).  Compl. ¶¶ 44, 51.  Plaintiff lodged a complaint with the Princeton Human Services Department on or about April 15, 2004, alleging disparate racial treatment by Defendant Parsons against Plaintiff's co-workers.  Compl. ¶ 12; see Defs.' Mot. Summ. J., Ex. X.  Parsons testified that there was no racial bias or special treatment concerning Janelle Easterling, a Caucasian employee who Plaintiff alleged was treated more favorably than African American co-workers.  Defs.' Fact St. ¶ 120; see Defs.' Mot. Summ. J., Ex. N, Ex. X.  Plaintiff never complained to the HAP Board or Princeton's Human Services Department that Parsons had discriminated against her based on race.  Pl.'s Fact St. ¶121; Defs.' Fact St. ¶121; see Defs.' Mot. Summ. J., Ex. N.  Plaintiff also contacted HUD on or about April 21, 2004, alleging mismanagement and improprieties of federal HUD funds disbursed to Defendant HAP.  Compl. ¶ 13; see Defs.' Mot. Summ. J., Ex. Y.  However, Parsons testified that he had absolutely no knowledge of Plaintiff's HUD complaint until after Plaintiff's filing of the present law suit.  Defs.' Fact St. ¶ 128; see Defs.' Mot. Summ. J., Ex. N.

## C.   HOUSING AUTHORITY'S ELIMINATION OF PROPERTY MANAGER POSITION

The HAP incurred a deficit of over $100,000 for the fiscal year of 2003 and an operating deficit of $72,795 in 2004.  Pl.'s Fact St. ¶¶ 65-66; Defs.' Fact St. ¶¶ 65-66.  The Board of the HAP began to discuss how to address the budget deficit in January or February 2004.  Pl.'s Fact St. ¶ 68; Defs.' Fact St. ¶ 68.  In connection with those discussions, Parsons drafted two budget proposals for the fiscal year ending June 30, 2005.  Pl.'s Fact St. ¶ 72; Defs.' Fact St. ¶ 72.  The first proposal provided for the retention of the property manager position, but reflected a deficit of $33,718.  The second proposed budget eliminated the property manager position and resulted in an operating surplus.  The HUD and the New Jersey Department of Community Affairs prohibit the HAP from adopting a budget that contains deficit spending.  Pl.'s Fact St. ¶ 76; Defs.' Fact St. ¶ 76.  Defendant Parsons recommended the elimination of the property manager position on or about May 14, 2004.  Ultimately, on or about May 19, 2004, the Board of the HAP adopted the budget that provided for the elimination of the property manager position.  Defs.' Fact St. ¶¶ 72-79.  The elimination of Plaintiff's position was effective on June 30, 2004.  Pl.'s Fact St. ¶ 93; Defs.' Fact St. ¶ 93).

## D.   NUMBER OF EMPLOYEES EMPLOYED AT THE HOUSING AUTHORITY

At the time Plaintiff's position was eliminated, the HAP alleges that it employed a total of 14 employees.  Defs.' Fact St. ¶ 102; see Defs.' Mot. Summ. J., Ex. V, W.  Defendants contend that during 2003 and 2004 the HAP did not employ more than 14 employees for each working day in each of 20 or more calendar weeks.  Defs.' Fact St. ¶ 103.  Defendants provided quarterly WR-30 forms entitled "Employer Report of Wages Paid," which were filed by the HAP with the

State of New Jersey, Division of Revenue to set forth the total number of employees reported in each quarter.  Defs.' Fact St. ¶ 103; see Defs.' Mot. Summ. J., Ex., V, W.  These WR-30 Forms indicate that at no time during 2003 did the Housing Authority employ more than 14 employees for each working day in each of twenty 20 or more calendar weeks.  Id.  The WR-30 Forms for 2004 indicate that the only time the HAP employed more than 14 employees was during the third quarter of 2004; at such time the HAP employed 15 employees.  Id.

Plaintiff contends that there is a genuine issue of material fact regarding the number of employees that were employed at the HAP during the 2003 and 2004 time frame.  In support, thereof, Plaintiff has provided two EEO-1 reports that were prepared by the HAP which reflect the number of employees that were employed during the 2003 and 2004 years.  Pl.'s Resp. to Defs' Mot. Summ J., Ex. R, Ex. S.  The EEO-1 reports in 2003 and 2004 both indicate that there were a total of 20 employees working at the HAP.  Id.  However, the EEO-1 reports only indicate the total number of different individuals who worked at the HAP over the course of the year and do not indicate the specific number of employees that were employed at any one time.

## II.    SUMMARY JUDGMENT STANDARD

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party.  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir.

2002).  The Court's function "at the summary judgment stage . . .  is not . . . to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  To successfully defend

against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported

allegations of the complaint, and must present more than the "mere existence of a scintilla of

evidence" in his favor.  Id. at 252.

## III.   DISCUSSION

### A.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE UNDER THE ADA OR TITLE VII BECAUSE THE HOUSING AUTHORITY IS NOT AN "EMPLOYER"

In deciding whether Plaintiff has established a prima facie case under the ADA or Title

VII,[1] as a preliminary matter, it must be determined whether the HAP is an "employer."  Under

the ADA and Title VII, the term "employer" means "a person engaged in an industry affecting

commerce who has 15 or more employees for each working day in each of 20 calendar weeks in

the current or preceding calendar year, and any agent of such person."  42 U.S.C. § 12111 (5)(A)

(ADA); 42 U.S.C. § 2000e(b) (Title VII); 29 C.F.R. § 1630.2.

---

[1]    Plaintiff did not name Parsons as a defendant in the ADA count of her Complaint, however Parsons was named as a defendant in the Title VII count.  Nevertheless, any ADA or Title VII claims against Parsons must be dismissed with prejudice.  It is well settled that individuals may not be held liable under Title VII.  See Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1077-78 (3d Cir. 1996), cert. denied, 521 U.S. 1129 (1997) (declining to extend Title VII definition of "employer" to include individual employees).  Likewise, an ADA claim against Parsons must be dismissed because individuals cannot be held liable under the ADA.  See Emerson v. Theil College, 296 F.3d 184, 189 (3d Cir. 2002) (this decision comports with other circuits that held individuals are not liable under Titles I and II of the ADA, which prohibits discrimination by employers); Santiago v. City of Vineland, 107 F. Supp. 2d 512, 552 (D.N.J. 2000) (where the court concluded that district courts in the Third Circuit have extended the Sheridan holding to conclude that there is no individual liability under the ADA).

### 1. Documents Regarding the Number of Employees at the Housing Authority

Defendant HAP has produced documents, which show that the HAP had no more than 14 employees during each quarter of 2003, and that in 2004 the HAP had a total of 15 employees for only one quarter, which fails to satisfy the threshold test under both the ADA and Title VII. Defs.' Mot. Summ. J., Ex. V, W.  As part of the Parsons certification, Defendant HAP attached a separate WR-30 form entitled "Employer Report of Wages Paid" for each quarter of the 2003 and 2004 years.  Defs.' Mot. Summ. J., Ex. W.  Parsons avers that these forms are filed quarterly with the State of New Jersey, Division of Revenue.  Defs.' Mot. Summ. J., Ex. W., Parsons Certification, ¶ 5.  The WR-30 forms include the name of each employee that was employed with the HAP during the quarter, the number of base weeks that the employee was employed for the quarter, and the wages earned during that quarter.  Defs.' Mot. Summ. J., Ex. W.  These forms demonstrate that at no time during 2003 did the Housing Authority employ more than 14 employees in the same quarter.  Defs.' Fact St. ¶ 103; <u>see</u> Defs.' Mot. Summ. J., Ex. W.   The WR-30 Forms for 2004 indicate that the only time the HAP employed more than 14 employees was during the third quarter of 2004; at such time the HAP employed 15 employees.  <u>Id.</u>  That means that there were not 15 employees in the second or fourth quarters, the quarters preceding or following the third quarter.  Therefore, since each quarter is broken into 13 weeks, it would be impossible for the HAP to meet the threshold of employing 15 or more employees for each working day in each of 20 calendar weeks.

Plaintiff asserts, however, that the HAP is an employer under the ADA and Title VII, and presents two EEO-1 reports prepared by the HAP which indicate that in 2003 and 2004 there

were a minimum of 15 HAP employees working over the course of the year.  Pl.'s Resp. to Def's

Mot. Summ. J.,  Ex. R, S.  Plaintiff asserts that this document creates an issue of material fact as

to whether the HAP is an "employer" under the ADA and Title VII.  However, The EEO-1

reports do not break down the number of employees by quarter as do the HAP Exhibits.  See

Def's. Mot. Summ. J., Ex. W.  Instead, the EEO-1 reports are based on the total number of

employees that were employed over the course of the year and do not reflect the number of

employees employed at any one time.  Pl.'s Resp. to Def's Mot. Summ. J.,  Ex. R, S.  In contrast,

the Parsons certification, accompanied by its WR-30 attachments, conclusively shows that there

is no issue of material fact regarding the number of employees employed at the HAP during the

years in question.  Thus, I find that the HAP did not have the threshold number of employees

required to bring suit under the ADA and Title VII.

> **2.    The Housing Authority Board Members as Employees under the ADA or Title VII**

Plaintiff argues in the alternative that the members of the HAP Board should also be

considered employees, thus raising the number of employees at the HAP for the years in question

above the required threshold[2] to meet the definition of an "employer" under the ADA and Title

---

[2]    Although unclear, the record suggests that there were approximately seven HAP Board Members during the relevant time period of 2003 and 2004.  Janette M. Whitaker Dep. 10:4-7, December 12, 2006; Pl.'s Resp. to Defs' Mot. Summ J., Ex. W, HAP By-Laws.  Thus, if this Court were to find that the Board Members are considered employees, it would almost certainly raise the number of employees above the required ADA threshold as the WR-30 reports indicate that there were at least two consecutive quarters with a minimum of 14 employees. Thus, if even one board member were added to the number of employees it would raise a strong question of fact as to whether there were 15 or more employees for each working day in each of 20 calendar weeks in the 2003 or 2004 calendar year.

VII.[3]  This Court finds Plaintiff's argument unpersuasive.  Under the ADA an employee is

defined as "an individual employed by an employer."  42 U.S.C. 12111(4).  However, when the

individual is a partner, officer, or member of a board of directors, the Court may look to six

factors to determine whether the individual is an employee of the organization.  These factors are

indicative of "whether the individual acts independently and participates in managing the

organization, or whether the individual is subject to the organization's control."  Clackamas

Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 449 (2003).  The six factors to consider

are:

> (1) whether the organization can hire or fire the individual or set the rules and
> regulations of the individual's work; (2) whether and, if so, to what extent the
> organization supervises the individual's work; (3) whether the individual reports
> to someone higher in the organization; (4) whether and, if so, to what extent the
> individual is able to influence the organization; (5) whether the parties intended
> that the individual be an employee, as expressed in written agreements or
> contracts; and (6) whether the individual shares in the profits, losses, and
> liabilities of the organization.

Id. at 449-50.  The Supreme Court in Clackamas held that "the common-law element of control

was the principal guidepost that should be followed" and that an examination must be conducted

to determine "whether the shareholder/directors operate independently and manage the business

or instead are subject to the firm's control."  Id. at 448.

### i.      Organization's Control over the Board Members

---

[3]      Although the Court in Clackamas focused on the meaning of the term "employee"
under the ADA, rather than Title VII, both statutes define "employee" in nearly identical
language and the Clackamas court noted that it was resolving a conflict that was not "confined to
the particulars of the ADA."  Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440,
444 (2003); 42 U.S.C. §§ 12111(4) and 2000e(f).  Thus, it is appropriate to apply the Clackamas
factors to determine whether the HAP board members were employees under both the ADA and
Title VII.

The first of the six Clackamas factors asks: "whether the organization can hire or fire the individual or set the rules and regulations of the individual's work." Id. at 449-50.  The court in Cronkhite v. Unity Physician Group, P.C., held that a director was not an employee when the facts showed that "he could not be hired or fired in the usual sense."  No. 05-1577, 2007 WL 1035091, at *6-7 (S.D. Ind. March 30, 2007); see also Pearl v. Monarch Life Ins. Co., 289 F. Supp. 2d 324, 328 (E.D.N.Y. 2003) (holding that a shareholder-physician was not an employee under a Clackamas analysis, in part because he "could be neither hired nor fired in the usual sense"); Solon v. Kaplan, 398 F.3d 629, 633-34 (7th Cir. 2005) (court held that a partner is not an employee where the termination provision at issue required a two-thirds vote of the general partners of a law firm in order to involuntarily terminate the partner's relationship with the firm). In Cronkhite, the individual was a member of a board of directors and could be terminated without cause only by a vote of seventy-five percent of the board of directors.  Id. at *6.  In the present case, the Board Members of the HAP are appointed by the Borough of Princeton for five year periods.  Pl.'s Resp. To Def's Mot. Summ. J., Ex. W; see also Kathryn Warren Dep. T13:1-5, December 11, 2006.  Similar to the individual in Cronkhite, the Board Members are not hired in the usual sense as they are appointed by the Borough.  In addition, the HAP itself doesn't hire the individual Board Members, which suggests that the HAP would not have the ability to fire them as the Borough of Princeton is the appointing body.  This cuts directly against the notion that the Board Members are employees of the HAP.

### ii.    Organization's Supervision over the Board Members' Work

The second of the Clackamas factors asks: "whether and, if so, to what extent the organization supervises the individual's work." Id. at 449-50.  Plaintiff argues that the Board

Members can somewhat influence the organization, but are ultimately limited by the by-laws. The Court finds it nonsensical to argue that the limitations of the HAP by-laws could be construed as exerting supervisory control over the Board Members. A former Board Member described her duties as "oversight of the Housing Authority, to make sure that we were following Federal guidelines as to HUD housing." Warren Dep. T13:14-19, December 11, 2006. It could hardly be argued that the organization has control over the Board Members, when in fact the Board is overseeing the HAP to ensure that it complies with HUD guidelines. Thus, the Court finds that the lack of the HAP's control over the Board Members militates against a finding that they are employees.

        **iii.**      **Whether the Board Members Report to a Higher Authority in the HAP**

The third of the Clackamas factors asks: "whether the individual reports to someone higher in the organization." Id. at 449-50. Plaintiff argues that because the Board Members' jobs are to oversee the HAP and ensure that it complies with HUD guidelines that they answer to the HUD and New Jersey Department of Community Affairs as a higher authority. However, Plaintiff's argument is misplaced because the Board Members are in fact the highest authority within the HAP. Warren Dep. T15 :15-18, December 11, 2006. In a closely analogous case, Parker v. Yuba County Water Dist., the court applied the Clackamas factors and focused its inquiry on "whether the members of the Board of Directors operate independently and manage the business or instead are subject to the District's control." No. 06-0340, 2006 WL 2644899, at *2 (E.D. Cal. September 14, 2006). The Parker court found that the Water District Board of Directors did not respond to anyone higher in the District hierarchy or to any superior body, thus

holding that the members of the Board of Directors were not employees for the purposes of the

ADA.  Id.  Similar to the directors in Parker, the Board Members of the HAP should not be

considered employees because they do not report to a higher authority within the HAP.  The HAP

Board Members act independently in managing the HAP and are not subject to the HAP's

control.  Warren Dep.T16:-15-18, December 11, 2006.  Thus, the third factor lends support to not

classifying the HAP Board Members as employees.

### iv.    To what extent are the Board Members able to Influence the organization

The fourth of the Clackamas factors asks: "whether and, if so, to what extent the

individual is able to influence the organization."  Clackamas, 38 U.S. at 449-50.  In this case, the

Board Members play a large role in influencing the HAP.  The Board Members control the

creation and elimination of employment positions and the Executive Director of the HAP has to

report back to them.  Warren Dep. T15:15-20,  T19:10-17, December 11, 2006.  Plaintiff argues

that the Board Members are limited in their influence over the HAP by its by-laws and HUD

guidelines, see David L. DeGeorge Dep. 67:1-68:7.  Nonetheless the fact remains that the Board

Members of the HAP exert a tremendous amount of influence on the organization in the form of

budgetary approvals, creation of employment positions, and general oversight.  Warren Dep.

T13:14-19, T15:15-20,  T19:10-17.  The fact that the Board Members are informed of  "what

they can do," in relation to the budget by the HUD is not relevant because the HUD is not the

same organization as the HAP.  Thus, the Court finds that this fourth factor favors not classifying

the Board Members as employees.

### v.    Intent of the Parties

The fifth of the Clackamas factors asks:  "whether the parties intended that the individual be an employee, as expressed in written agreements or contracts."  Id. at 449-50.  In Crank v. Palermo Supply Co., the New Jersey Appellate Court held that an "employee" under the New Jersey workers' compensation laws can include appointed volunteer board members who are reimbursed for their expenses.  326 N.J. Super. 84, 87,92 (App. Div. 1999).  Similar to the board members in Crank, the HAP Board Members are volunteers entitled to reimbursement of their expenses.  DeGeorge Dep. 67:1-68:7.  Plaintiff argues that because the HAP Board Members meet the definition of an "employee" under the New Jersey workers' compensation laws that they should also be considered employees for purposes of the ADA and Title VII.  Plaintiff's argument is misplaced.  The court in Crank did not base its holding on whether the board members were exercising control over the organization or whether the parties intended them to be employees; the court based its holding on the intent of the legislators, who defined an employee in the workers' compensation context to include "[e]very officer, appointed or elected . . . of the State, county, municipality or any board or commission."  N.J.S.A. 34:15-43.  Indeed, the Crank court held that the legislative intent of the workers' compensation laws is to provide benefits to any appointed or elected official of a municipal public entity, including a commissioner of a housing authority, 326 N.J. Super. at 92, but this is not indicative of whether the HAP Board Members should be classified as employees when applying a control based test as mandated by the Clackamas factors.

There is scant evidence in the record to suggest that the HAP Board Members were viewed by the HAP as employees or even viewed themselves as employees.  Indeed, one former Board Member characterized her HAP Board appointment as being a volunteer position, Warren

Dep. T13:1-5, thus indicating that the Board Members did not view themselves as employees.  In the context of intent, a volunteer is a far cry from a typical employee hired for financial compensation.  The Court finds that there is no cause to believe that the Borough of Princeton, the HAP, or the Board Members themselves viewed their appointment as elevating their status to an employee.  In addition, there are no contracts or agreements in the record to indicate that they were viewed as employees.  Thus, this factor also favors not classifying the HAP Board Members as employees.

### vi.    Sharing in Profits

The sixth and final <u>Clackamas</u> factor asks: "whether the individual shares in the profits, losses, and liabilities of the organization."  <u>Id.</u> at 449-50.  The record reveals that the Board Members did not share in the profits or losses of the HAP, DeGeorge Dep. 15:3-5, but that is because the HAP is a public agency in which no individual may share in the profits or losses.  Therefore, this factor does not favor viewing the Board Members as employees.

Plaintiff contends that when the facts are viewed most favorably for the non-moving party, a reasonable juror could determine that the individuals on the HAP Board were employees.  However, the facts of this case do not allow for a reasonable juror to find that the HAP Board Members were employees of the HAP, and thus, this issue should be decided as a matter of law.  In applying the <u>Clackamas</u> factors, the Court is mindful that "the common-law element of control [is] the principal guidepost that should be followed," and that the record clearly indicates the Board Members' control over the organization through: (1) the creation/elimination of employment positions; (2) approval of HAP budgets; (3) oversight of the HAP in administering HUD guidelines; (4) the reporting back of the Executive Director to the HAP Board; and (5)

-14-

perhaps most probative, that the Board Members of the HAP were the highest authority within the HAP organization.  Id. at 448.  Therefore, after considering all these factors, the Court finds that the HAP Board Members cannot be considered employees.  As a result, Plaintiff has failed to establish a prima facie claim under the ADA or Title VII because the HAP lacks the requisite number of employees to be considered an employer under the aforementioned Acts.  Thus, these claims will be dismissed.

> **B.      PLAINTIFF HAS NOT ESTABLISHED A PRIMA FACIE CASE UNDER THE FMLA BECAUSE PLAINTIFF IS NOT AN ELIGIBLE EMPLOYEE**

To be entitled to FMLA leave, plaintiff must be considered an "eligible employee."  29 U.S.C. § 2612.  The term "eligible employee" does not include "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees, if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C.A. § 2611(2)(B)(ii).

> All public agencies are covered by FMLA regardless of the number of employees; they are not subject to the coverage threshold of 50 employees carried on the payroll each day for 20 or more weeks in a year.  However, employees of public agencies must meet all of the requirements of eligibility, including the requirement that the employer (e.g., State) employ 50 employees at the worksite or within 75 miles.

29 C.F.R. § 825.108(d).  If a plaintiff cannot show that her employer employs the requisite minimum number of employees, dismissal of an FMLA claim is proper.  Reddinger v. Hosp. Cent. Servs., Inc., 4 F. Supp. 2d 405, 410 (E.D. Pa. 1998);  Schmitt v. Beverly Health and Rehabilitation Servs., Inc., 962 F. Supp. 1379, 1383-1384 (D. Kan. 1997) (holding that to state a claim under the FMLA plaintiff must at least establish allegations that she is an "eligible employee"); Rich v. Delta Air Lines, Inc., 921 F. Supp. 767, (N.D. Ga. 1996) (holding that an

employee must satisfy each of the "eligible employee" criterion independently to be eligible for FMLA leave).

It is clear from the record that the HAP itself employs far fewer than the requisite 50 employees.[4]  Instead, Plaintiff argues that the HAP, the Borough of Princeton, and the State of New Jersey should be viewed as a single public agency, and thus, a single employer for the purpose of determining employee eligibility under the FMLA.  The United States Code of Federal Regulations states that "a State or a political subdivision of a State constitutes a single public agency and, therefore, a single employer for purposes of determining employee eligibility. For example, a State is a single employer; a county is a single employer; a city or town is a single employer." 29 C.F.R. § 825.108(c)(1).   In deciding whether a local government entity is a single employer for purposes of determining an employee's eligibility under the FMLA, the court should first decide whether state law definitively resolves such issue and, if the entity's status remains unclear, then the court should refer to United States Bureau of the Census 'Census of Governments.'  Rollins v. Wilson County Gov't, 154 F.3d 626, 629 (6th Cir. 1998).

New Jersey case law definitively resolves the status of the HAP and the Borough of Princeton.  Under New Jersey law, a local housing authority "is a separate, independent entity which 'is a body corporate and politic' created by the governing body of a municipality or county, exercising public and essential governmental functions, with many powers."  English v.

---

[4]        As discussed earlier in this Opinion, the WR-30 reports provided by Defendants conclusively show that the Housing Authority employed no more than 15 people at any one time during the calendar years of 2003 or 2004.  Defs.' Facts St. ¶ 103; see Defs.' Mot. Summ. J., Ex. V, W.  Even the EEO-1 reports, which count the total number of employees that worked at the HAP over the course of the entire calendar year only list 20 people for each of the two years in question.  Pl.'s Resp. to Defs.' Mot. Summ. J., Ex. R, S.  Thus, the HAP by itself falls short of employing over 50 employees.

Newark Housing Auth., 138 N.J. Super 425, 430 (App. Div. 1976).  Furthermore, a housing

authority is not a subordinate branch of the governing body - "it is a unique separate entity,

possessing and enjoying many governmental powers and privileges." Id.; see DeVita v. Housing

Auth. of the City of Paterson, 17 N.J. 350, 360 (1955) (holding that the Paterson Housing

Authority is a separate entity with statutory powers independent of the municipality); Tumulty v.

Jersey City, 57 N.J. Super. 503, 511-13 (App. Div. 1959) (holding that the Jersey City Housing

Authority is an independent instrumentality of the municipality); see Monte v. Milat, 17 N.J.

Super. 260, 267 (Law Div. 1952) (holding that the housing authority of a city was not a

"subordinate board" within meaning of statute).  Similar to the holdings in DeVita, English, and

Tumulty the HAP must also be considered a separate, independent entity from the Borough that

created it.

      In any event, it is long "established that a public corporation, notwithstanding that its very

existence is dependent upon the State, is an independent entity in the eyes of [New Jersey] law."

N.J. Sports and Exposition Auth. v. McCrane, 119 N.J. Super. 457, 495 (Law Div.  1971) (citing

N.J. Turnpike Auth. v. Parsons, 3 N.J. 235, 243 (1949)) (holding that the New Jersey Sports and

Exposition Authority, whose members are appointed by the Governor, is a public body corporate

and politic independent from the State); see e.g., State v. Parking Auth. of City of Trenton, 29

N.J. Super 335, 338-39 (App. Div. 1954) (holding that a parking authority created by and in a

municipality under the Parking Authority Law is an independent public corporate entity, distinct

and separate from the municipality, despite having members appointed by the board of

commissioners of the city); McGlynn v. N.J. Public Broadcasting Auth., 88 N.J. 112, 150-51

(1981) (the court noted that the Public Broadcasting Authority was envisioned as an independent

entity insulated from political interference and entanglements); <u>Central Const. Co. v. Horn</u>, 179

N.J. Super. 95, 103 (App. Div. 1981) (court held that the township sewerage authority was not

only an agency of the municipality involved but also an independent entity distinct and separate

from the municipality); <u>De Angelis v. Addonizio</u>, 103 N.J. Super. 238, 251-53 (Law Div. 1968)

(the court held that the mere fact that a corporate body exercises public and governmental

functions does not in itself dictate that its employees are in service of the State for purposes of

civil service laws; also finding that the New Jersey College of Medicine and Dentistry, is an

independent employer, and not in the service of the State); <u>Broadway Nat. Bank of Bayonne v.</u>

<u>Parking Auth. of Bayonne</u>, 40 N.J. 227, 233 (Law Div. 1963) (holding that the parking authority

is an independent entity distinct and separate from the municipality); <u>Jordan v. Zidel</u>, 40 N.J.

244, 247 (1963) (holding that the  municipality may create independent entities to provide

municipal water and sewer services as a separate body politic and corporate with broad

independent powers); <u>N.J. Turnpike Auth. v. Washington Twp., Mercer County</u>, 16 N.J. 38, 46

(1954) (the court held that even though the members of the Turnpike Authority are appointed by

the Governor with the advice and consent of the Senate rather than elected by the voters it

doesn't alter the status of the Turnpike Authority as an independent corporate entity).

Similar to the public corporations created in McCrane, <u>N.J. Turnpike Auth. v.</u>

<u>Washington Twp., Mercer County</u>, and <u>Parking Auth. of City of Trenton</u> the HAP also has board

members that were appointed by the public body that created it.  However, New Jersey courts

still held that those public corporations are independent entities.  Thus, even if there wasn't

specific case law holding that a housing authority is a separate independent entity, it is still

manifest that as a public corporation, the HAP is an independent entity, which must be treated as separate from the Borough of Princeton and State of New Jersey for employment purposes.

Plaintiff argues that the regulations call for a state, county, and town to be deemed a single employer for purposes of the FMLA.  However, this is a misreading of the pertinent regulations.  The controlling regulations go on to state that each one (state, county, or town) itself is considered a single employer. See 29 C.F.R. § 825.108(c)(1).  Plaintiff further relies on the case of Housing Auth. Of City of Newark v. Sagner, which stated that "[o]ur own state policy is that a local housing authority shall constitute an agency and instrumentality of the municipality creating it."  142 N.J. Super 332, 341 (App. Div. 1976).  However, Plaintiff's argument is merely an attempt to use agency theory to merge two separate entities together as a single employer.  New Jersey case law clearly regards a housing authority and municipality as two separate entities as indicated in the cases of English, DeVita, and Tumulty.

Interestingly, although Plaintiff now makes the argument that the HAP and the Borough of Princeton are a single employer for FMLA purposes, Plaintiff filed a Stipulation of Dismissal dismissing the Borough of Princeton from this action with prejudice.  See Stipulation of Dismissal, Doc. No. 20, June 18, 2007.  The Borough of Princeton was dismissed following its filing of a summary judgment motion arguing at length that it cannot be considered Plaintiff's employer for the purposes of her claims.  This is a paradox which the Court can only reconcile by the rationalization that Plaintiff also viewed the HAP and Borough of Princeton as two separate entities.

In conclusion, while New Jersey case law may regard a housing authority as an agency of the municipality, the State's law is also consistently definitive in its view that they are two

-19-

separate and independent entities.  As a result, the number of employees employed by the

Borough of Princeton cannot be combined with the number of HAP employees to determine if

the Plaintiff was covered by the FMLA.  The number of HAP employees falls far short of the

more than 50 employee requirement.  Therefore, the FMLA claim against the HAP must be

dismissed, just as the ADA and Title VII claims.[5]

## C.   THIS COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S NJLAD CLAIMS

Title 28 of the United States Code, Section 1367(c) states in relevant part, "[t]he

district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim

substantially predominates over the claim or claims over which the district court has original

jurisdiction, [or] the district court has dismissed all claims over which it has original

jurisdiction[.]" 28 U.S.C. § 1367(c).  Moreover, absent some compelling circumstances, it is

generally proper for the district court to decline to exercise supplemental jurisdiction.  See

Shaffer v. Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984) (holding that

"pendant jurisdiction [over state law claims] should be declined where the federal claims are no

longer viable . . . ." (citation omitted)); see also Hedge v. Musco, 204 F.3d 109, 123 (3d Cir.

2000)(recognized that if the district court has dismissed all claims over which it has original

jurisdiction, the court must decline to decide pendent state claims unless "considerations of

---

[5]      Plaintiff names Parsons as a defendant in her FMLA claim, however this Court
does not reach the question of whether Parsons is an "employer" as defined under the FMLA
because Plaintiff does not meet the threshold requirement of an "eligible employee" under the
FMLA.  Thus, Plaintiff's FMLA claim against Defendant Parsons must also be dismissed with
prejudice.

judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so").

Furthermore, district courts should not decide issues of state law "both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). If the state issues substantially predominate, then the state claims may be dismissed without prejudice and left for resolution to state tribunals. Id. Courts in this circuit have consistently declined to exercise supplemental jurisdiction over state claims when all federal claims have been decided. See Hedge, 204 F.3d at 122-23 (upholding district court's refusal to exercise supplemental jurisdiction over state law assault and battery claims after dismissing plaintiff's § 1983 claims); V-Tech Serv., Inc. v. Street, 215 Fed. Appx. 93, 96 (3d Cir. 2007) (refusal to exercise supplemental jurisdiction over fraud, promissory estoppel, breach of contract, and unjust enrichment claims after dismissal of RICO claims); Wall v. Dauphin County, 167 Fed. Appx. 309, 313 (3d Cir. 2006) (dismissal of state claims for lack of jurisdiction after dismissal of plaintiff's § 1983 and § 1985 claims); Mosca v. Cole, 384 F. Supp. 2d 757, 770 (D.N.J. 2005) (remanding remaining state LAD and other claims back to state court after plaintiff's § 1981, § 1985 and other federal claims were dismissed by the district court).

In this case, the Court is dismissing with prejudice, Plaintiff's ADA, FMLA, and Title VII claims against all Defendants. These claims include all those over which this Court had original subject matter jurisdiction. Consequently, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims under NJLAD. Pursuant to 28 U.S.C. § 1367(d), the period of limitations for the NJLAD claims shall be tolled while the

they were pending in this Court and for a period of 30 days from the date of this Opinion and

accompanying Order unless State law provides for a longer tolling period.

**IV.     CONCLUSION**

      For the reasons stated above, all federal claims, including the ADA, FMLA, and Title VII

claims, are dismissed with prejudice against all Defendants due to the Plaintiff's failure to set

forth a prima facie case.  The NJLAD claims are dismissed without prejudice and may be

reasserted in state court.  An appropriate order will follow.


 Dated: December 12th, 2007


                                    s/ Freda L. Wolfson_____
                                    The Honorable Freda L. Wolfson
                                    United States District Judge